UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                              No. 21-CR-303-MV

RYAN HARRIS,

          Defendant.

REVOCATION OF SUPERVISED RELEASE FINAL HEARING MEMORANDUM

The defendant Ryan Harris is scheduled to appear before Your Honor on Wednesday, June 17, 2026 for a Revocation of Supervised Release final hearing in the above referenced case.  It is anticipated that Mr. Harris will admit the allegation and proceed to sentencing.  For the reasons that follow, it is requested that Your Honor revoke his term of supervised release, sentence Mr. Harris, to include termination of future supervised release.

As alleged in the Amended Petition for Revocation of Supervised Release (Doc. 171), Mr. Harris is facing a special condition violation for unsuccessfully completing the inpatient substance abuse treatment program at New Mexico Wellness Center, in Rio Rancho, New Mexico, by leaving the program without notice or permission.  This is a grade C violation, and the revocation range of imprisonment is 7 to 13 months pursuant to USSG §7C1.5  The sentencing guidelines are advisory and a grade C violation is the lowest level of violative conduct.  The Court has discretion in sentencing Mr. Harris.

Procedural History:

On January 23, 2024, Mr. Harris was sentenced by this Court to 57 months imprisonment and 3 years of supervised release. (Doc. 75)  As of the date of sentencing Mr. Harris had 1,124 days or 36 months and 29 days credit for time detained. (Doc. 72)  He was released from the Bureau of Prisons upon the conclusion of his federal sentence on August 20, 2024, and was removed in custody to Texas for outstanding charges which were relevant conduct for this federal case.  Mr. Harris entered a guilty plea to the Texas charges and on October 10, 2024 he received a sentence of 2 years, which by law was required to run concurrent to his federal sentence.  The Court is aware of Mr. Harris's prior supervised release procedural history.

On April 17, 2026, Ryan Harris was arrested by APD on an outstanding warrant.  On April 30, 2026, Ryan appeared before Magistrate Judge Kirtan Khalsa for his initial appearance to include preliminary revocation and detention hearings. (Doc. 174)  Mr. Harris waived his preliminary hearing (Doc. 172) and waived his detention hearing (Doc. 173) and an Order of Detention was issued (Doc.

175).

Prior Violations of Supervised Release:

VOSR I:

On October 23, 2024, Mr. Harris commenced his term of supervised release.  On that date, Mr. Harris was in Virginia, having been transported there upon the completion of his Texas sentence based on an outstanding warrant.  On December 6, 2024, a Petition for Arrest Warrant was issued (Doc. 76). On February 13, 2025, Mr. Harris was arrested on the warrant in Albuquerque. (Doc. 82)  On April 16, 2025, the Defendant appeared before Your Honor for a Final Hearing (Doc. 96) and on May 21, 2025 Your Honor issued an Amended Judgment (Doc. 98) to reflect the fact that a bed had become available at Diersen (Ditmas Charities) in Las Cruces. NM, where Mr. Harris was to "reside in a residential reentry center for a term of (up to) 180 days. . . .  You must follow the rules and regulations of the center." (Doc. 92)

VOSR II:

On June 2, 2025, a Second Petition for Revocation of Supervised Release was issued based on Mr. Harris's June 1, 2025 termination from Diersen after "leaving without an approved pass and failing to return to the program." (Doc. 100).  On August 19, 2025, Mr. Harris was arrested in Albuquerque (Doc. 108), and upon appearance before Magistrate Judge Yarbrough on August 21, 2025, Mr. Harris waived preliminary and detention hearings (Doc. 111 & 110) and an Order of Detention issued (Doc. 113).

 On September 30, 2025 an Amended Petition for Warrant issued (Doc. 115) adding state criminal charges allegedly occurring on August 17, 2025.  Mr. Harris remained in custody. (Doc. 123) On November 28, 2025, Mr. Harris filed an unopposed motion to be placed in the third-party custody of Anchor Behavioral Health, an inpatient residential treatment program, (Doc. 127), to report as of December 3, 2025 by Order of Magistrate Judge Yarbrough (Doc. 129).

VOSR III

On December 19, 2025, a Petition for Action on Conditions of Release Pending Revocation Hearing (Doc. 133) was approved for Mr. Harris's termination from Anchor Behavioral Health Program on December 17, 2025.  On January 23, 2026, Mr. Harris was arrested. (Doc. 137)  On January 28, 2026, before Magistrate Judge Yarbrough, Mr. Harris waived preliminary and detention hearings (Doc. 139) and his conditions of release were revoked (Doc. 142).

On February 18, 2026, an Amended Petition for Revocation of Supervised Release was filed (Doc. 142), adding new state criminal charges occurring on January 8, 2026 and January 19, 2026.

On February 25, 2026, a Final Hearing for Revocation of Supervised Release was held at which time Your Honor imposed time served (141 days) for the Amended Petition (Doc. 115) and deferred a

determination of the additional Amended Petition (Doc. 142) awaiting a determination of the prescheduled preliminary and detention hearings before Magistrate Judge Robbenhaar. (Docs. 152, 153)

On March 19, 2026, a Final Hearing for Revocation of Supervised Release was held, and Your Honor sentenced Mr. Harris to time served through March 23, 2026, at which time he will enter the New Mexico Wellness inpatient substance abuse program. (Docs. 163, 164)

VOSR IV:

On April 8, 2026, a Petition for Revocation of Supervised Release was filed (Doc. 167) and subsequently Amended on April 30, 2026 (Doc. 171) alleging Mr. Harris's departure from New Mexico Wellness, the instant matter before the Court.  Mr. Harris indicates on the evening of April 6, 2026, he was in his room and decided to go out the window to go buy a pack of Newport cigarettes.  As he returned, he was met outside by an employee who in sum and substance stated, you are busted.  You can't come back in.  We are notifying the police.  Unable to go back into the facility, Ryan left.

2025 Amendment to the US Sentencing Guidelines:

After the formal process of suggested sentencing guideline amendments, comments and review, amendments were implemented effective November 1, 2025.  Violations of supervised release were separated from violations of probation and are contained in Part C – Violations of Supervised Release, USSG §7C1.1 et seq.

As explained in the Introductory Commentary: "Because supervised release is intended to promote rehabilitation and ease the defendant's transition back into the community, the Commission encourages courts—where possible—to consider a wide array of options to respond to non-compliant behavior and violations of the conditions of supervised release. These interim steps before revocation are intended to allow courts to address the defendant's failure to comply with court-imposed conditions and to better address the needs of the defendant while also maintaining public safety."

Mr. Harris and Supervised Release:

Mr. Harris understands supervised release to be as it is described above and in idealistic terms. An opportunity for a previously incarcerated individual, who has served his time, to reintegrate and transition back into society.  It is intended as a support mechanism to assist the individual to obtain employment and housing, while providing ancillary services, and not as additional constraints on his liberty.  Mr. Harris has not had the opportunity to control his own life for many years.  Even after completing his sentence, he has been repeatedly shuffled from jail, to state court, to treatment facility, etc.

Why Mr. Harris Fails Supervised Release:

There are many reasons Mr. Harris has failed supervised release as reflected in his terminations from Diersen Charities, Anchor Behavioral Health, and New Mexico Wellness.  The reasons are based

on his experiences as a youth, in the criminal justice system, and during his periods of incarceration, which have led him to challenge and question authority and to have little trust in those who are ostensibly trying to help him.

In his underlying federal case, I am the third CJA attorney appointed on his behalf and I was specifically asked to take on this matter because the defendant was purportedly extremely oppositional, unwilling to listen to or engage with appointed counsel, etc. The communications were so problematic that prior counsel requested a psychological exam to determine mental competency, which was ordered and completed, finding Mr. Harris competent to proceed. Upon first meeting Mr. Harris, I spent a good amount of time going through his background history, listening to his issues and delving into why he had problems with his CJA counsel and with prior counsel in other state criminal matters. Throughout my representation, Mr. Harris and I had our disagreements but we were able to work through them. In my opinion, Mr. Harris is a very literal person who will ask specific questions and will get frustrated with unresponsive answers. Knowing how to effectively communicate with Ryan develops over time, and when that level is reached his actions are understandable. Mr. Harris requires, and at times will demand, answers. He is mentally unable to just silently follow instructions, especially when he seeks clarification. Our communication is excellent; his responses are thorough and honest, to the point where I rely on his factual account, which is later borne out. I include my observations because it informs why his interactions at treatment facilities are problematic. Having had bad experiences with programs, counselors, and attorneys, he is unwilling to automatically trust and believe the very people who are attempting to help him. These interactions are made more difficult in light of Mr. Harris's diagnoses of posttraumatic stress disorder and antisocial personality disorder. (Doc. 65, Ex. 1, Dr. Brovko report)

As a black male, Mr. Harris is more likely to see problems in the way he is treated for the following reasons. First, African Americans are imprisoned at nearly five times the rate of Whites,[1] and Black males received federal sentences that were 13.4 percent longer than White males.[2] Numerous studies have found that African American men who have been incarcerated face, and perceive, greater discrimination than those who were never incarcerated. "Reentering Black males have to deal with the historical impact of race, which continues to weigh on present-day issues of reentry."[3] The combination of incarceration and high levels of discrimination may lead to high levels of vigilance and resistance

---

[1] In 2023 the imprisonment rate per 100,000 US residents was 929 for Blacks and 190 for Whites. (Table 5, Prisoners in 2023 – Statistical Tables, DOJ, Bureau of Justice Statistics, September 2025, NCJ 310197, Full Report available for download at: https://bjs.ojp.gov/library/publications/prisoners-2023-statistical-tables

[2] "2023 Demographic Differences in Federal Sentencing", Key Findings, available at: https://www.ussc.gov/research/research-reports/2023-demographic-differences-federal-sentencing

[3] "It's Hard Out Here if You're a Black Felon": A Critical Examination of Black Male Reentry" (2019) Available at: https://journals.sagepub.com/doi/10.1177/0032885519852088

toward society. "Research on African Americans indicates that anticipation of unfair treatment is associated with psychiatric disorders, major depressive disorder, depressive symptoms, hypertension, and poor sleep quality."[4]

Opportunities have been made available to Mr. Harris. Your Honor has always provided supervised releasees with compassion, understanding, concern, resources, and insightful guidance. Probation Officer Keary Fenstermacher has exhibited a sincere willingness to help Mr. Harris with opportunities for treatment and assistance at a level that exceeds the efforts of most probation officers. AUSA Bell has also agreed to support additional treatment programs, when an objection would have been reasonable. Yet to follow the same path and expect a different result is simply wishful thinking.

"Over the last few decades, the number of individuals on supervision have increased dramatically, while resources for probation offices have not. As a result, probation offices can experience high caseloads and may lack appropriate resources to assist individuals under supervision"[5] or they may need to allocate resources based on an analysis of each releasees likelihood of success. The time, effort, and cost US Probation has expended in Mr. Harris's supervision could be better utilized for other defendants in supervised release.

Why Mr. Harris Will Have a Greater Chance to Succeed:

This is not an abandonment of Ryan Harris. Rather it allows him the opportunity to make the decisions in his life. What must be seen as surprising, is when Mr. Harris left NM Wellness on the late-night hours of April 6, 2026, he went the next day to Redemption Opportunity House (hereinafter "Redemption House"), made application in person and was accepted for admission commencing April 8, 2026. (Ex. 1, Redemption House Acceptance Letter). Redemption House is a treatment center with an initial 30-day lockdown policy. Mr. Harris was there from April 8, 2026 until he was told by Redemption House, the day before his arrest by APD on April 17, 2026, that there was an outstanding warrant for his arrest and he was escorted from Redemption House. Mr. Harris was informed that he would have to resolve the warrant if he wants to continue in the program. (Ex. 2, email) The undersigned communicated with Elisha Sanchez-McDuffie, who was the CSW, Community Support Worker, assigned to Mr. Harris. She indicated Ryan was doing very well during the time he was at Redemption. He did not have any problems and was positively interacting with the counselors. It is noted that

---

[4] See "Discrimination Fully Mediates the Effects of Incarceration History on Depressive Symptoms and Psychological Distress among African American Men" (2019, pages 7 & 8 and articles cited therein). Available at: https://pmc.ncbi.nlm.nih.gov/articles/PMC6556396/

[5] "Department of Justice Report on Resources and Demographic Data for Individuals on Federal Probation or Supervised Release" (page 23), available at: https://www.justice.gov/d9/2023-05/Sec.%2015%28h%29%20-%20DOJ%20Report%20on%20Resources%20and%20Demographic%20Data%20for%20Individuals%20on%20Federal%20Probation.pdf

although the federal arrest warrant for Mr. Harris was approved by Your Honor on April 7, 2026 (Doc 176), it would not be accessible to the public. His pending state charges, which were the subject of the March 19, 2026 Final Revocation Hearing, are available to the public and Ms. Sanchez-McDuffie indicated the staff at Redemption House check their client's open cases for warrants and upcoming court dates. After a state court notice of upcoming hearing dates was sent on March 23, 2026 to Mr. Harris's last listed address, and returned undeliverable on April 13, 2026 (Ex. 3), a bench warrant for Mr. Harris was entered on April 16, 2026. (Ex. 4) Although Ryan's willingness to go into a treatment program the day after his discharge from NM Wellness may seem entirely contradictory, it is consistent with his need to make decisions for himself.

Ryan has the wherewithal, competence, and support necessary to provide for his needs. He will not be homeless. Upon completion of his sentence, Mr. Harris plans on living with Veronica Ramos, who has her own apartment, is pregnant with Ryan's child and is expecting in a couple of months. Letters of support from Virginia Handshy, Ryan's mother, and Omini Jarrett, are attached as Exhibit 5.

Notably, during his time on supervised release, he was able to obtain prospective employment, predicated upon his availability, in a jewelry kiosk at the mall, labor construction work, and in landscaping, a field he previously worked in. Moreover, during his time on supervised release, he also contacted, applied, and was accepted into various treatment and sober living facilities, all after applying and obtaining Medicaid.

Simply put, what Ryan Harris needs is the opportunity to succeed and transition on his own. This can be achieved when his supervised release is fully terminated.

**Respectfully submitted:**

*Wayne Baker*

Wayne Baker, Esq.
Attorney for Defendant Ryan Harris

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court on June
14, 2026, using the CM/ECF system.

*Wayne Baker*

Wayne Baker, Esq

# EXHIBIT

# ONE

# Redemption Opportunity House

A *Program of Comprehensive Reentry Services, Inc.*
10722 Central Ave SE Albuquerque, New Mexico 87123

**Date: April 7, 2026**

**RE: Acceptance Into Redemption Opportunity House**

Dear Ryan Harris,

On behalf of Comprehensive Reentry Services, Inc., this letter is to inform serves as formal notification that you have been accepted into the Redemption Opportunity House program.

Following the intake and approval process, you have been approved for placement in a structured inpatient/outpatient transitional housing program designed to provide accountability, support, and stability for individuals working toward successful reintegration into the community.

| Program Overview | Program Expectations |
|---|---|
| The Redemption Opportunity House provides:<br><br>• Structured and supervised housing<br>• Program accountability and oversight<br>• Required participation in program activities and assignments<br>• Support toward employment, education, and personal stability<br>• Coordination with supervision agencies, when applicable | As a participant in the program, you are expected to:<br><br>• Comply with **all house rules, policies, and procedures**<br>• Maintain respectful conduct toward staff, residents, and property<br>• Participate fully in required programming and meetings<br>• Remain compliant with **any court, probation, or parole conditions, if applicable** |

Acceptance into the Redemption Opportunity House is contingent upon bed availability prior to arrival. While every effort will be made to accommodate placement, admission cannot be guaranteed if no beds are available on the release date. Availability as well as continued compliance with all program requirements. Failure to adhere to program policies may result in disciplinary action or discharge.

Please note that acceptance is contingent upon verification of program eligibility requirements. Individuals who are required to register on any state or federal sex offender registry are not eligible for residency currently.

Please ensure that you are prepared to arrive on or before April 8, 2026. If you are unable to do so, you must notify us in advance, as failure to arrive or communicate may result in forfeiture of your placement. Residents are expected to provide the following personal documents: a valid state-issued identification (ID), Social Security card, and medical insurance or Medicaid card (if applicable).

If you do not currently have one or more of these documents, our staff will assist you in the process of obtaining them after admission to the program.

We look forward to supporting you during your time in the program by offering personalized guidance, connecting you with valuable resources, and providing ongoing mentorship. Our team is committed to assisting you as you take meaningful steps toward long-term stability and success in your transition and continued progress.

If you have any questions or require additional information, please contact program staff directly.

Sincerely,

Hazel Armstead

Administrative Director – (505) 220-0644

Redemption Opportunity House

Comprehensive Reentry Services, Inc.

reentryservicesabq@gmail.com

# EXHIBIT

# TWO

 **Gmail**                                        **Wayne Baker <federallitigator@gmail.com>**

## Re: Ryan Harris

1 message

---

**ELISHA Sanchez-McDuffie** <iamchosen988@gmail.com>          Sun, Jun 14, 2026 at 1:57 PM
To: Wayne Baker <federallitigator@gmail.com>

The date of acceptance is the day admitted . There was a warrant issued for his arrest we advised him he had to take care of it and then would be admitted back the day before his arrest when he was escorted off property  I'm not at work today will return Tuesday to send records my apologies feel free to call me asap if u need anything else

On Sun, Jun 14, 2026 at 1:48 PM Wayne Baker <federallitigator@gmail.com> wrote:

> Elisha,
>
> Can you please provide the other information I requested ASAP? I need it to file my memorandum and I want to include the acceptance letter.  When was he admitted, how long was he there, and why did he have to leave?
>
> Thanks,
> Wayne Baker
>
> On Sat, Jun 13, 2026 at 1:06 AM ELISHA Sanchez-McDuffie <iamchosen988@gmail.com> wrote:
>
>>  Acceptance Letter Ryan Harris.pdf
>>
>> On Fri, Jun 12, 2026 at 12:04 PM Wayne Baker <federallitigator@gmail.com> wrote:
>>
>>> Ms. Sanchez,
>>> This is Wayne Baker, Ryan Harris's attorney.  I am following up on my email request of documents pertaining to his stay at your facility.  I have to file a Memorandum with the Court today for his upcoming Court appearance on Wednesday 6-17-2026.  Can you give me an update and whether you will be able to provide the info today.  If not, I will have to provide them separately to the Court.
>>>
>>> Thanks, Wayne
>>>
>>> --
>>>
>>>
>>> --
>>> Law Office of Wayne Baker
>>> 14112 Piedras Road, NE
>>> Albuquerque, NM 87123-2323
>>> 505-652-4222 (office)
>>> 888-308-0987 (fax)
>>> federallitigator@gmail.com

# EXHIBIT

# THREE

**DISTRICT COURT**
SECOND JUDICIAL DISTRICT
P.O. BOX 488
ALBUQUERQUE, NEW MEXICO 87103
**CRIMINAL DIVISION**

CR26-969

US POSTAGE PITNEY BOWES
ZIP 87102 $ 001.32
02 4W
0000388836 MAR. 23. 2026

Not Mine

NTXTF 858 FP 3 0004/08/26
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
BC: 87103048888 *0968-03821-23-39

AN
87181392794301B

FILED
Bernalillo County
4/13/2026 8:25 AM
KATINA WATSON
CLERK OF THE COURT
Elizabeth Gomez

# EXHIBIT

# FOUR

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
4/16/2026 2:26 PM
KATINA WATSON
CLERK OF THE COURT
John A Lucero

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

State of New Mexico, Plaintiff

Case No: **D-202-CR-2026-00969**

v.

**Ryan L Harris, Defendant**
Aliases: L RYAN HARRIS; RYAN HARRIS; Ryan Lebond Harris; RYAN MAIER; Ryan Maoyer;
RYAN L MAOYER; Ryan Maoyor; Ryan Mayer
Homeless
Albuquerque NM  87105

DOB: **06/10/1988**  WEIGHT: 200 Lbs. EYES :Brown GENDER :Male
SSN: **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** HEIGHT: 6 Ft. 3 In. HAIR: Black RACE: **Black**

## BENCH WARRANT

THE STATE OF NEW MEXICO TO ANY OFFICER AUTHORIZED TO EXECUTE THIS WARRANT:

YOU ARE HEREBY COMMANDED to arrest **RYAN L HARRIS**, and bring him/her forthwith before this Court to answer the following:

### FAILURE TO COMPLY WITH CONDITIONS OF RELEASE-PTS

**Grand Jury indictment / Criminal information filed on the following charges:**
Attempt to Commit a Felony, to wit: Robbery; Aggravated Assault (Disguised); Concealing Identity

**Bond Provisions:**
**HOLD WITHOUT BOND/ NO CCP**

**Extradition Information:**
The State will extradite the defendant from:
**WARRANT MAY BE EXECUTED IN ANY JURISDICTION**

THE HONORABLE MATTHEW E. CHAVEZ
DISTRICT JUDGE

## RETURN

**RYAN L HARRIS** was arrested and taken into custody on the _____ day of _____, _____.

_____        _____        _____
Signature                          Law Enforcement Officer              Date

Page 1/1

# EXHIBIT

# FIVE

 **Gmail**

## Ryan Harris

1 message

**Virginia Maier** <adaylhmaier46@gmail.com>                    Sat, Jun 13, 2026 at 1:53 PM
To: federallitigator@gmail.com

Honorable Judge,

My name is Virginia Handshy, and I am the mother of Ryan Harris. I am also a Registered Nurse. I respectfully submit this letter on behalf of my son for your consideration during his revocation hearing.

As Ryan's mother, I have known him for all 38 years of his life. While I understand the seriousness of the matter before the Court, I hope to provide some insight into the person I know as a son, brother, uncle, and member of our family.

Ryan has always been a family-oriented individual who values his relationships with those he loves. He has maintained a strong bond with his younger sisters and is affectionately known as "Uncle Ryan" by his nieces and nephews. He remains an important part of their lives, and they look to him as someone they love and respect.

One of the things I admire most about Ryan is his willingness to be honest about his past mistakes. He does not attempt to hide from them or make excuses for them. Instead, he often uses his own experiences as a teaching tool when speaking with his younger sisters, nieces, and nephews. He encourages them to make better choices, pursue positive opportunities, and avoid the mistakes that have led to difficult consequences in his own life. Through these conversations, he demonstrates accountability, self-reflection, and a sincere desire to help others learn from his experiences.

Ryan is also a thoughtful and creative individual who enjoys music and reading. These interests have helped him continue to learn, grow, and reflect on the direction of his life. Over the years, I have seen maturity and personal growth in him, along with a genuine desire to move forward in a positive and productive manner.

As his mother, I have always loved and supported Ryan, but I have also held him accountable for his actions. I believe it is important to accept responsibility for one's choices and to learn from them. Ryan understands that his decisions have consequences, and I have seen him reflect on those consequences and work toward becoming a better person.

If given the opportunity, Ryan intends to seek gainful employment and establish a stable living environment. He will not be facing these challenges alone. I am committed to helping him transition successfully by providing emotional support, assisting him in finding employment opportunities, and helping him secure stable housing. Our family stands ready to support him and encourage him to remain focused on building a responsible and productive future.

As both a mother and a Registered Nurse, I have seen that people are capable of growth, rehabilitation, and positive change when they have accountability, support, and determination. I believe Ryan possesses those qualities, and I believe he has the ability to become a productive and contributing member of society.

I respectfully ask the Court to consider Ryan's character, the growth he has demonstrated, the positive role he plays within his family, and the strong support system that awaits him.

Thank you for your time, consideration, and service.

Respectfully,

Virginia Handshy, RN
Mother of Ryan Harris

 Gmail

**Wayne Baker <federallitigator@gmail.com>**

## FW: Letter of support for Ryan Harris
1 message

**Linda Zieba-Romero** <Linda_Zieba-Romero@nmd.uscourts.gov>    Wed, Jun 10, 2026 at 1:43 PM
To: "federallitigator_gmail.com" <federallitigator@gmail.com>, "Bell, Kimberly (USANM)" <kimberly.bell@usdoj.gov>
Cc: Keary Fenstermacher <Keary_Fenstermacher@nmp.uscourts.gov>

Counsel –

I am forwarding an email the Judge has received on behalf of Mr. Harris.

**Linda Zieba-Romero (505-992-3826)**
**Courtroom Deputy to Senior Judges**

**Martha Vázquez and Judith C. Herrera**
**United States District Court, District of New Mexico**

---

**From:** Jadee <ominijarrett31@gmail.com>
**Sent:** Tuesday, June 9, 2026 8:19 PM
**To:** NMDml_Judge Vazquez' Chambers nmd.uscourts.gov <VazquezChambers@nmd.uscourts.gov>
**Subject:** Letter of support for Ryan Harris

 **CAUTION - EXTERNAL:**

Your Honor,

My name is omini jarrett, and I am writing regarding Ryan Harris.

I understand that the Court has important decisions to make, and I respectfully ask that you consider giving him another opportunity to return home to his family and continue working toward a better future.

I know that he has had difficulties in treatment programs and has been removed from programs in the past. I am not writing to excuse those situations. Instead, I want the Court to know that despite his struggles, he remains an important part of my life and my daughter's life. We love him, care about him, and want to see him succeed.

His absence has been very hard on our family. My daughter misses him, and we both hope that he can receive the help and support he needs to become stable and productive. I believe he is capable of making positive changes if given the

opportunity and proper support.

I respectfully ask the Court to consider our family when making its decision. Thank you for your time, consideration, and service.

Respectfully,

Omini jarrett

505 810 2660

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.